IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

**UNITED STATES OF AMERICA,**

        Plaintiff,

v.

**LATONIA SMITH,**

        Defendant.

No. 3:22-cr-00051-MO

OPINION AND ORDER

**MOSMAN, J.,**

    This matter comes before me on Defendant Latonia Smith's pro se Motion to Reconsider Motion to Dismiss or in the Alternative Motion for Reconsideration of Bail [ECF 171]. The Government responded [ECF 197]. And Defendant, represented by counsel, replied [ECF 199]. I held oral argument on the motion on July 8, 2024. After oral argument, I took the matter under advisement. For the reasons below, I GRANT Ms. Smith's Motion to Reconsider. I conditionally GRANT in part and DENY in part her Motion to Dismiss Indictment. I DENY her Motion for Reconsideration of Bail.

## BACKGROUND

    In 2019, Ms. Smith was charged in Nevada state court with assault with a deadly weapon and burglary with a deadly weapon after she entered the residence of an attorney with a Glock .45 replica BB-gun. Indictment [ECF 10] at 4. The attorney represented Caesars Entertainment in an

1 – OPINION AND ORDER

employment dispute involving Ms. Smith's mother. *Id.*; Resp. to Mot. for Review of Magistrate Judge's Release Order ("Resp. to Mot. for Review") [ECF 135] at 11–12. The charges relating to the incident are still pending. Resp. to Mot. for Review at 14; Indictment at 4.

In 2021, a federal jury convicted Ms. Smith of five counts of mailing threatening communications to employees of and attorneys representing Caesars Entertainment. Indictment at 4. She was released from prison on June 3, 2022, and placed on supervised release. *Id.* On June 8, 2022, Ms. Smith began to send emails to judges (G.N., R.B., and J.D.) who presided over her 2021 conviction. *Id.* at 4–7; Resp. to Mot. for Review at 14. She also sent emails to the judges' staff, the spouse of the one of the judges (N.B.), and her probation officer (S.M.). *Id.*

In July 2022, the Government indicted Ms. Smith on five counts of cyberstalking under 18 U.S.C. § 2261A(2)(B) and 2261(b)(5). Indictment at 1–3. Each count was for a different victim. The indictment quoted the following ten emails:

1. June 8, 2022, email to N.B.: "[H]ad to go to jail because of decisions your husband made during my trial and the corrupt justice system for minorities which obviously ruined my entire life/everything I've worked for and which I am obviously very bitter about . . . ."

2. June 23, 2022, email to S.M.: "You get what you f* deserve."

3. June 23, 2022, email to S.M.: "You people in this state will all suffer when the day comes—society, judges, police, attorneys. The whole system. People will know why their families were taken and broken into little pieces. Mercy to those that escape that fate."

4. June 23, 2022, email to S.M.: "Some good advice: Life is short, society should be careful who they piss off." The email contained a link to a YouTube video of a compilation of cell phone videos from a mass shooting in Las Vegas.

5. June 25, 2022, email to G.N.: I just wanted to give a friendly notice for you and your colleagues: YOU ALL FUCKED UP AND MADE THE WRONG CHESS MOVE." Smith then listed the names of G.N. and G.N.'s colleagues and ended with: "LET THE SHOW BEGIN. NEVADA IS GOING TO LOVE THIS!!!!"

6. June 25, 2022, email to N.B.: Listed N.B. and R.B.'s children and their activities and interests, followed by, "LET'S KEEP THEM IN FOCUS." "I saw that his mother [redacted] passed. Good Dad. His brother is pretty successful too (software engineering is

2 – OPINION AND ORDER

it?! … nice).” "I think [R.B.] would remember that he let prosecutors use my email to a mental health provider at trial knowing it would aid them in conviction, which is against the law by the way. But who cares about laws anymore right?! Judges are above the law!!! He also appointed me a federal public defender knowing she was ineffective. Failed to file a suppression motion after police raided my home without warrants. But I believe she was instructed not to by your corrupt husband.” "Well what they don't know is that they ruined the WRONG life and this won't age very well for Nevada. So [N.B.], you seem like an intelligent woman. PhD-Yale. How do we address this? I don't think [R.B.] would want such an injustice as this (or any injustice) to happen to his kids now would he? Beautiful family. Again tell [R.B.] I said hello!!!”

7. June 25, 2022, email to courtroom administrator for J.D.: "Tell [J.D.], Henderson is nice I see why she chose that area. A lot of shops nearby. Smart. I have nothing against her as of now. It's clear the rest of her corrupt colleagues that I told [redacted] about (that's [G.N.]'s] assistant; I know they all talk because they've all been illegally conspiring on this case from the very beginning with the exception of [R.B.] … he's newly added.” "I hate judges but so far [J.D.] is pretty nice … However she is nice right now and I hope she never has to end up on the other side with the rest of them because well they're not in a good place and it's not them that will pay for their corrupt actions so to speak, but society and they'll have to watch.”

8. June 26, 2022, email to S.M.: "I have not broken any laws and nothing in my supervision provisions says I can't email. . . . Plus if I was going to do anything, none of you would be able to do anything because you wouldn't know anything before it's too late and I'd kill myself so.”

9. June 26, 2022, email to G.N.'s courtroom deputy: "And when the day comes and the mission has been completed [G.N.] I'll be dying that day.”

10. June 30, 2022, email to S.M.: "I believe the guys told me that I couldn't email public officials but I wanted to tell [J.D.] it's such a small world I know her daughter [K.P.] … Just interesting small world … I've realized something broken systems [S.M.] broken systems [S.M.] is why Americans die.”

*Id.* at 4–7.

The case was originally assigned to Chief Judge Miranda Du of the District of Nevada [ECF 8]. Because the victims included district court judges from the District of Nevada, the case was transferred to Judge Roger Benitez of the Southern District of California [ECF 17].

In September 2022, Ms. Smith filed a pro se Motion to Dismiss Indictment [ECF 31]. Ms. Smith's motion requested that the Court dismiss the indictment, or in the alternative, dismiss

3 – OPINION AND ORDER

Count III. Mot. to Dismiss at 1–2. Ms. Smith's motion also asked that points one and two be removed from the indictment. *Id.* Judge Benitez denied the motion to dismiss but granted the motion to strike point two from the indictment.[1] *Id.* at 12–13.

In January 2024, Judge Benitez recused himself [ECF 139], and I was assigned the case. Ms. Smith then moved for reconsideration of Judge Benitez's denial of the motion to dismiss and moved to dismiss the indictment. Ms. Smith's motion raises four arguments. First, she argues that Judge Benitez erred when he found that the content of the emails was not criminal but then failed to dismiss her indictment. Mot. for Recon. at 3. Second, she argues that the emails do not fall under the "speech integral to the course of criminal conduct" exception. *Id.* at 4. Third, she argues that the emails do not amount to true threats. *Id.* at 5. And fourth, she argues that even if the Government can prove that the emails were speech integral to the course of criminal conduct or true threats, it cannot prove that her emails establish a course of conduct under § 2261A. *Id.* at 5–6.

At oral argument, the Government advanced two theories of its case in response to Ms. Smith's motion. First, it argued that Ms. Smith's emails violated § 2261A(2)(B) because they were speech integral to criminal conduct. And second, it argued that Ms. Smith's emails violated § 2261A(2)(B) because they were true threats.

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." In considering a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and

---

[1] Point two of the indictment states that Smith has pending charges in Nevada state court for assault with a deadly weapon and burglary with a deadly weapon for entering the residence of an attorney with a Glock .45 replica BB-gun. Indictment at 4.

"analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

## DISCUSSION

### I. Motion for Reconsideration

At oral argument, I explained why I planned to grant Ms. Smith's Motion for Reconsideration. The Government objected to my planned ruling, raising various arguments. For the reasons stated on the record, I reject the Government's arguments and grant the Motion for Reconsideration. I now turn to the merits of Ms. Smith's Motion to Dismiss Indictment.

### II. Motion to Dismiss Indictment

A person violates § 2261A(2)(B) if, with the intent to "harass" or "intimidate," she uses an "electronic communication system" to "engage[] in a course of conduct that causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress."

Because § 2261A(2)(B) punishes speech, the speech must fall under one of two exceptions to the First Amendment: speech integral to criminal conduct or true threats. *See United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014) (speech integral to criminal conduct); *United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011) (true threats); *see also United States v. Ackell*, 907 F.3d 67, 76 (1st Cir. 2018) ("[W]e must read 'intent to . . . harass,' as referring to criminal harassment, which is unprotected because it constitutes true threats or speech that is integral to

5 – OPINION AND ORDER

proscribable criminal conduct." (citing *United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014))). The Government contends that both exceptions apply here. I address each in turn.

### A. Speech Integral to Criminal Conduct

"To qualify as speech integral to criminal conduct, the speech must be integral to conduct that constitutes another offense that does not involve protected speech." *United States v. Sryniawski*, 48 F.4th 583, 588 (8th Cir. 2022). In other words, speech is integral to criminal conduct "when the defendant commits an offense by engaging in both speech and non-speech conduct, and the sole objective of the speech is to facilitate the defendant's criminal behavior." *Osinger*, 753 F.3d at 950 (Watford, J., concurring). Instances where the First Amendment did not protect speech include speech integral to antitrust conspiracy, *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949); extortion, *United States v. Petrovic*, 701 F.3d 849, 855 (8th Cir. 2012); and in-person harassment, *Osinger*, 753 F.3d at 947.

At oral argument, the Government argued that Ms. Smith's emails were speech integral to criminal conduct because they were integral to the 2019 Glock incident and the conduct that resulted in her 2021 conviction. I disagree. Ms. Smith's emails were not related to this conduct because it occurred three years earlier, involved different victims, and involved a different motive. *Cf. Osinger*, 753 F.3d at 947 (applying the exception where the defendant stalked and harassed the same victim for an uninterrupted period of time for the same reason). I conclude that the Government does not have a viable theory under the "speech integral to criminal conduct" exception. If the Government's case is to proceed, it must do so under the "true threats" exception.

### B. True Threats

True threats have both an objective and subjective element. *See United States v. Keyser*, 704 F.3d 631, 638 (9th Cir. 2012); *Bagdasarian*, 652 F.3d at 1118. To meet the objective prong,

the court asks "whether a reasonable person would foresee that [her] statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *Keyser*, 704 F.3d at 638 (citation omitted). When analyzing the objective prong, the context of the speech matters and the court must examine the statement "in the entire context and under all the circumstances" in which it occurs. *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1077 (9th Cir. 2002), *as amended* (July 10, 2002). To meet the subjective prong, the court asks whether the speaker "mean[t] to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual." *Bagdasarian*, 652 F.3d at 1122 (citing *Virginia v. Black*, 538 U.S. 343, 359 (2003)). If it is "not clear" whether a statement is "protected expression or [a] true threat[]," it is generally "appropriate to submit the issue, in the first instance, to [a] jury." *United States v. Hanna*, 293 F.3d 1080, 1087 (9th Cir. 2002) (citation omitted).

      I conclude that a jury could reasonably find that Email 4 is a true threat. The text and video together could be seen as a serious expression of intent to harm. *See Bagdasarian*, 652 F.3d at 1110 (noting that implicit threats of harm can be considered true threats). The statement "Life is short" in conjunction with the video suggest that S.M.'s life is at risk. Additionally, Ms. Smith knew S.M. personally, harbored personal animus toward S.M., and communicated the threat privately rather than issuing it publicly. *Compare Planned Parenthood*, 290 F.3d at 1086 (noting that "a privately communicated threat is generally more likely to be taken seriously than a diffuse public one") *with Bagdasarian*, 652 F.3d at 1119–20 (concluding that statements were not true threats where the defendant posted them anonymously to a public internet message board). As such, a jury could reasonably find that Email 4 is a true threat.

7 – OPINION AND ORDER

Nonetheless, I conclude that Emails 1, 5, 7, 8, 9, and 10 are not true threats because they do not satisfy the objective prong of the test. Here, the Indictment is short on facts and context. It mentions the 2019 Glock incident, Ms. Smith's 2021 conviction, and that the victims were "assigned in their official capacities" to the case that resulted in Ms. Smith's conviction. Indictment at 4. But otherwise, the Indictment is limited to the text of the emails Ms. Smith sent to the victims and fails to detail how the victims reacted to the emails, whether the victims knew about the 2019 Glock incident, and the extent of real-world interaction each victim had with Ms. Smith. *Id.* at 4–7. Because the indictment offers limited context, the Court's analysis must rely mostly on the text of the emails. *See Bagdasarian,* 652 F.3d at 1119–20 (noting that a key element of the objective test is whether the words themselves "constitute[] a threat in the ordinary meaning of the word").

In *Bagdasarian*, the defendant posted disturbing comments to an Internet message board about then-presidential candidate Barack Obama. *Id.* at 1115. He was convicted under 18 U.S.C. § 879(a) for threatening to kill a presidential candidate. *Id.* at 1116. The Ninth Circuit reversed the defendant's conviction, holding that the defendant's comments did not constitute "a threat in the ordinary meaning of the word: 'an expression of an intention to inflict . . . injury . . . on another.'" *Id.* at 1119 (quoting Webster's Third New Int'l Dictionary 2382 (1976)). It explained:

> The 'Obama fk the niggar' statement is a prediction that Obama 'will have a 50 cal in the head soon.' It conveys no explicit or implicit threat on the part of Bagdasarian that he himself will kill or injure Obama. Nor does the second statement impart a threat. '[S]hoot the nig' is instead an imperative intended to encourage others to take violent action, if not simply an expression of rage or frustration. . . . It is difficult to see how a rational trier of fact could reasonably have found that either statement, on its face or taken in context, expresses a threat against Obama by Bagdasarian.

*Id.*

8 – OPINION AND ORDER

To be sure, *Bagdasarian* is distinguishable from here in some respects. Ms. Smith sent the emails privately, had real-world interactions with most of the victims, and had a personal motive against the victims for their roles in her 2021 conviction. Even so, *Bagdasarian* sets a high bar for when statements constitute threats within the ordinary meaning of the word. And here, within the relevant context and based on their ordinary meaning, Emails 1, 5, 7, 8, 9, and 10 do not express an intent to inflict injury on the victims. Many of Ms. Smith's emails are ominous, express her anger, and make clear that she feels wronged. *See e.g.*, Email 1 ("[H]ad to go to jail because of decisions your husband made during my trial and the corrupt justice system for minorities which obviously ruined my entire life/everything I've worked for and which I am obviously very bitter about . . . ."). But the emails do not convey an explicit or implicit threat that Ms. Smith herself planned to harm or assault the recipients. Indeed, many of the emails do not make threats at all. *See e.g.*, Email 1; Email 10 ("I believe the guys told me that I couldn't email public officials but I wanted to tell [J.D.] it's such a small world I know her daughter [K.P.] . . . Just interesting small world . . . I've realized something broken systems [S.M.] broken systems [S.M.] is why Americans die."). And to the extent the emails threaten harm, they threaten it against society generally, not the recipients themselves. *See e.g.*, Email 7 (stating "it's not them that will pay for their corrupt actions so to speak, but society and they'll have to watch"). Accordingly, a reasonable jury could not find that Emails 1, 5, 7, 8, 9, or 10 on their face or in the relevant context constitute true threats.

At oral argument, the Government raised two contextual arguments: (1) that the Court must analyze the emails collectively by analyzing each email in the context of the other emails; and (2) that the Court must analyze the emails in the context of Ms. Smith's past conduct, namely the 2019 Glock incident and her 2021 conviction. I address each argument in turn.

9 – OPINION AND ORDER

The Government's argument that the Court must analyze each email in the context of the other emails rests in part on a faulty assumption: that viewing protected speech in the context of other protected speech can turn that speech into unprotected speech. This assumption runs contrary to the principles underpinning protected speech: protected speech does not become unprotected by the mere fact that there is more of it. I agree with the Government that the speech in one count of an indictment might, in some cases, need to be analyzed in the context of speech in other counts. But when all the counts involved contain speech protected by the First Amendment, then they do not in any way render the speech unprotected.

But what happens when I analyze protected emails in the light of an unprotected email—here, Email 4? Does that change my analysis of any of the other emails as to render them true threats. To use one example: N.B., a judge's spouse, is the recipient of the relatively innocuous Email 1. Would that email, which is clearly speech protected by the First Amendment, lose that protection if it is read in the light of an email sent a couple of weeks later to S.M., a probation officer, containing a mass shooting video? Or to put it in terms of the objective prong for true threats: Would a reasonable person foresee that her statement to N.B. in Email 1 would be interpreted by N.B. as a serious expression of intent to harm or assault when viewed in light of the mass shooting video?

For most of the protected emails, the answer is no. The Government's argument here suffers from two flaws, one substantive and one procedural. The substantive flaw is that there is nothing in Email 1 that must now be understood differently, or read in a new, more ominous light, by virtue of the video attached to Email 4. It remains what it is: speech protected by the First Amendment. I am aware that close calls should be sent to the jury. But I am still duty-bound to analyze these emails through the lens of an objective test in light of this motion. And in this

10 – OPINION AND ORDER

particular instance, the constitutional protection over Email 1 remains, even in the light of all the other emails.

Fair enough, but is there another email that does get pushed into the zone of unprotected speech by virtue of a contextual analysis of all the emails together? Yes. For starters, the mass shooting video is sent to S.M. on June 23, 2022, along with two other emails—Emails 2 and 3—that same day. Each of these emails should be read in the very direct light of the video. Read in that light, they each contain elements that become more ominous in light of the video and are thus transmogrified into true threats.

One other email also moves from protected to unprotected speech in light of the mass shooting video, and that is Email 6. The initial expression along the lines of "you wouldn't want any injustice to happen to your kids, would you?" takes a more threatening tone in light of the video. Of course, that requires that N.B., the recipient of Email 6, is aware of the video attached to Email 4. But the Government likely does an adequate job of addressing this issue in Email 7's discussion of everyone talking about this case.

The procedural problem in the Government's argument is that it occasionally wants to enhance the threatening nature of an email with evidence external to the indictment. At oral argument the Government asked that the Court analyze Email 2 in the context of the movie that Ms. Smith allegedly quotes.[2] The problem for the Government, however, is that the indictment does not reference this context at all. When "ruling on a motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Boren*, 278

---

[2] According to the Government, Joaquin Phoenix's character in the *Joker* says to Robert De Niro's character "you get what you fucking deserve" before shooting him in the head. United States' Supp. Br. in Opp'n to Def.'s Mot. to Dismiss [ECF 208] at 4 n.2. According to the Government, Ms. Smith admitted that Email 2 was a direct quote of this scene. *Id.*

F.3d at 914. Accordingly, I reject the Government's request to go outside the indictment and consider Email 2 in that context. But since Email 2 already survives a motion to dismiss for other reasons, this issue seems moot.

As for the Government's second argument, I agree that Ms. Smith's past conduct could have bearing on the Court's true threats analysis. However, it is not clear that the 2019 Glock incident and 2021 conviction are admissible evidence. For this reason, I order an evidentiary hearing to determine whether the 2019 Glock incident and 2021 conviction are admissible. If they are admissible, then the Court's analysis of all of Ms. Smith's emails could change.

In summary, a jury could reasonably find that Emails 2, 3, 4, and 6 are true threats, but no jury could reasonably find that Emails 1, 5, 7, 8, 9, and 10 are true threats because they fail the objective prong of the test.

### C. Course of Conduct

Finally, Ms. Smith argued that even if the Government can show that some of her emails were criminal, it cannot show that she engaged in a course of conduct because she did not send two or more criminal emails to each victim.

For Ms. Smith to be liable under Section 2261A(2)(B), the Government must show that she "engage[d] in a course of conduct." A "course of conduct" is "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2).

Two circuit court cases speak to this issue. In *United States v. Shrader*, the defendant harassed the victim over the course of three decades. 675 F.3d 300, 302–03 (4th Cir. 2012). The Fourth Circuit concluded that the Government could establish a course of conduct under § 2261A(2)(B) through a combination of criminal and noncriminal acts, explaining:

> [Section 2266(2)] does not impose a requirement that the government prove that each act was intended in isolation to cause serious distress . . . to the victim[;]

12 – OPINION AND ORDER

> [rather] the government is required to show that the totality of the defendant's conduct 'evidenc[ed] a continuity of purpose' to achieve the criminal end. . . . To read in a requirement that each act have its own specific intent element would undo the law's protection for victims whose anguish is the result of persistent or repetitive conduct on the part of a harasser.

*Id.* at 312. In other words, *Shrader* establishes that each act in a course of conduct does not need to be criminal.

However, the Eighth Circuit in *United States v. Sryniawski* diverges from *Shrader*. 48 F.4th 583 (8th Cir. 2022). In *Sryniawski*, the defendant sent a series of emails to a candidate for state legislature. *Id.* at 585. *Sryniawski* rejected the Government's theory that the defendant was liable under § 2261A(2) because he sent obscene material in one of the emails, explaining that sending one criminal email was not enough to show a "course of conduct":

> The cyberstalking statute as charged here requires proof that a defendant engaged in a 'course of conduct' that consists of '2 or more acts, evidencing a continuity of purpose.' 18 U.S.C. §§ 2261A(2), 2266(2). The transmission of one e-mail with obscene attachments is not a course of conduct. Lawful acts like logging onto a computer, opening an internet browser, and *sending other e-mails* cannot be aggregated with criminal conduct to establish a 'course of conduct.' Each 'act' must be taken with the requisite criminal intent and reasonable expectation of causing substantial emotional distress.

*Id.* at 589 (emphasis added). *Sryniawski*, unlike *Shrader*, requires that a course of conduct consist of two or more criminalizable acts.

I agree with *Shrader* that both criminal and noncriminal acts can combine to establish a course of conduct. Nonetheless, here, as in *Sryniawski*, the only conduct at issue is speech. As *Sryniawski* suggests, it is incompatible with the First Amendment to use constitutionally protected speech to prove an element of a crime. While, unlike *Sryniawski*, I am not imposing a requirement that the course of conduct consist of at least two criminalizable acts, I do hold that the course of conduct cannot consist of constitutionally protected acts. As such, to establish a course of conduct

for each count, the Government must point to at least two acts that are not constitutionally protected.

Based on my analysis above, Emails 2, 3, and 4 to S.M. could be considered true threats. The Government has therefore shown a course of conduct for Count 5. Likewise, I have categorized Email 6 to N.B. as a true threat and the emails to S.M. constitute other acts that satisfy the "course of conduct" element for Count 2 of the indictment. As to all the other emails and their accompanying counts, I will reserve ruling until after the upcoming evidentiary hearing.

## CONCLUSION

For the reasons stated above, I GRANT Ms. Smith's Motion for Reconsideration. I conditionally GRANT in part and DENY in part her Motion to Dismiss Indictment. I DENY her Motion for Reconsideration of Bail. I conclude that Emails 2, 3, 4, and 6 could be considered true threats, meaning Counts 2 and 5 should be sent to a jury. But I conclude that Emails 1, 5, 7, 8, 9, and 10 are not true threats. I order an evidentiary hearing to determine whether the 2019 Glock incident and 2021 conviction are admissible evidence. If admissible, I will then reconsider my analysis of all of Ms. Smith's emails.

IT IS SO ORDERED.

DATED this  8   day of August, 2024.

*Michael W. Mosman*
MICHAEL W. MOSMAN
Senior United States District Judge